**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| MHL TEK, LLC | § | |
| | § | |
| v. | § | CASE NO. 2:07-CV-289 |
| | § | |
| NISSAN MOTOR CO., ET AL. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.      Introduction**

Pending before the court is the plaintiff MHL Tek, LLC's ("MHL") motion for reconsideration (Dkt. No. 278) of the order dismissing claims one and three (Dkt. No. 269).  The court held an evidentiary hearing on September 16, 2009 and heard evidence relating to the motions to dismiss.  For the following reasons, the motion to reconsider is DENIED.

**II.     Factual and Procedural Background**

On July 13, 2007, MHL filed suit against BMW AG, BMW of North America, LLC, BMW Manufacturing Co., LLC, Isuzu Motors, Ltd., Isuzu Motors America, Inc., Subaru of America, Inc., Subaru of Indiana Automotive, Inc., Nissan Motor Co., Ltd., Nissan North America, Inc., Nissan Technical Center North America, Inc., Dr. Ing. h.c. F. Porsche AG, Porsche Cars North America, Inc., Hyundai Motor America, Hyundai Motor Co., Hyundai Motor Manufacturing Alabama, LLC, Kia Motors America, Inc. and Kia Motors Corporation (collectively "the defendants") for patent infringement.  MHL alleges that the defendants infringe U.S. Patent Nos. 5,663,496 ("the '496 patent"), 5,731,516 ("the '516 patent"), and 5,741,966 ("the '966 patent").  These three patents disclose tire pressure monitoring systems ("TPMS").  In a separate action, *MHL Tek, LLC v. General Motors Corp.*, MHL brought suit against another group of automobile manufacturers, alleging

infringement of the same three TPMS patents described above.  *MHL Tek, LLC v. Gen. Motors Corp.*, No. 2:08-cv-125 (E.D. Tex. Mar. 24, 2008) [hereinafter *MHL II*].

The defendants moved to dismiss claims one and three under Rule 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction (Dkt. No. 161, 170, 171, 210).  In their motions, the defendants alleged that the plaintiff no longer owns the '496 and '966 patents because MHL's predecessor, Animatronics, Inc. ("Animatronics"), assigned these patents to a third party, McLaughlin Electronics, Inc. ("ME").  Because MHL does not own the '496 and '966 patents, the defendants argued that MHL lacks standing to enforce these patents.  In response, MHL denied that these patents were ever assigned, and even if they were, that assignment was later rescinded.  After considering the parties' arguments, on March 31, 2009, the court granted the motions to dismiss (Dkt. No. 269).

MHL subsequently moved for this court to reconsider its order dismissing the two claims relating to infringement of the '496 and '966 patents.  MHL argued that this court erred in granting the defendants' motion to dismiss because the court did not consider all of the relevant evidence relating to ownership of the disputed patents.  On September 16, 2009, the court held a hearing in which MHL presented arguments and evidence that it owns the '496 and '966 patents.  In particular, MHL argued that (1) the '496 and '966 patents were never assigned, (2) the assignment was subject to a financial condition, and (3) an oral rescission canceled the assignment.  These arguments have been fully briefed and are ripe for consideration.

III.     **Analysis**

A.     **Applicable Law Regarding Motions for Reconsideration**

The party moving for reconsideration must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). Mere disagreement with a district court's order does not warrant reconsideration. *Krim v. pcOrder.com, Inc.*, 212 F.R.D. 329, 332 (W.D. Tex. 2002), *aff'd*, 402 F.3d 489 (5th Cir. 2005). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

B.     **Applicable Law Regarding Motions for Dismiss for Lack of Subject Matter Jurisdiction**

If the court lacks subject matter jurisdiction over the plaintiff's claims, then those claims must be dismissed. Fed. R. Civ. P. 12(h)(3); *Krim v. pcOrder.com*, 402 F.3d 489, 494 (5th Cir. 2005). The court, not the jury, determines subject matter jurisdiction issues, including factual questions. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). Attacks on subject matter jurisdiction may be divided into two categories: facial attacks and factual attacks. *Williamson*, 645 F.2d at 412; *Bowens v. Fed. Bureau of Prisons*, 2005 WL 3133475, at *3 (E.D. Tex. Nov. 23, 2005) (quoting *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260-61 (11th Cir. 1997)).

In a facial attack, the court merely determines if the plaintiff's complaint sufficiently alleges jurisdiction; all allegations in the complaint are assumed to be true. *Williamson*, 645 F.2d at 412; *Bowens*, 2005 WL 3133475, at *3. A motion to dismiss based upon a facial attack "should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his

3

claim that would entitle him to relief." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

On the other hand, factual attacks, such as the defendants' motions to dismiss, challenge whether the court has, in fact, subject matter jurisdiction, so evidence outside of the pleadings is considered. *Williamson*, 645 F.2d at 413; *Bowens*, 2005 WL 3133475, at *3.  Unlike in a facial attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims" in a factual attack. *Williamson*, 645 F.2d at 413.  Instead, the plaintiff has the burden of proving by a preponderance of the evidence that the trial court has subject matter jurisdiction. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

### C.    Assignment of the '496 and '966 Patents

MHL argues that Animatronics never assigned the '496 and '966 patents to ME.  First, MHL contends that the Development Agreement did not assign any patents.  Second, the November 1993 Assignment's carve-out language excluded the subject matter of the '496 and '966 patents from assignment, according to MHL.  In support of its argument that these patents were not assigned, MHL offers the testimony of Michael Handfield, inventor of the TPMS patents and co-owner of Animatronics, and Gerry McLaughlin, former Chief Engineer of ME.  Messrs. Handfield and McLaughlin testified that Animatronics never assigned the '496 and '966 patents to ME.

MHL's evidence is insufficient to persuade this court to reconsider its earlier ruling that the '496 and '966 patents were assigned to ME.  As explained in the order granting dismissal, the carve-out language in the Development Agreement and Patent Assignment covers only individual components of the TPMS; patents for the overall TPMS, i.e., the '496 and '966 patents, were

assigned to ME. *MHL II*, 622 F. Supp. 2d 400, 410 (E.D. Tex. 2009). MHL's proposed interpretation of the carve-out language would effectively reserve rights to all patents covering a TPMS, and would thus nullify the entire assignment. *Id.* at 410-11 (citing *McCoy v. Meridian Auto. Sys.*, 390 F.3d 417, 422 (6th Cir. 2004)). MHL's extrinsic evidence of intent to exclude the patents at issue does not negate the plain language of the agreements; therefore the court will not reconsider its ruling that the '496 and '966 patents were assigned to ME. *See Old Life Ins. Co. of Am. v. Garcia*, 411 F.3d 605, 613 (6th Cir. 2005) (noting that Michigan law does not permit consideration of extrinsic evidence when the agreement is unambiguous); *Opdyke Inv. Co. v. Norris Grain Co.*, 320 N.W.2d 836, 841 (Mich. 1982) ("Extrinsic evidence may be used to supplement, but not contradict, the terms of the written agreement.").

### D.    Assignment Subject to Financial Condition

MHL argues that the purported assignment of the '496 and '966 patents was governed by a financial condition, which ME never performed. As such, the assignment either never became effective or subsequently lost its effectiveness.

The parties have offered two different versions of the Development Agreement and dispute which version is authentic. In support of its argument that the assignment was conditional, MHL points to language in its version of the Development Agreement, which states, "When performance under this agreement is completed *and full financial value of this contract plus any amount incurred for the manufacturing by Animatronics as* [sic] *been paid* McLAUGHLIN ELECTRONICS will own, or hold the royalty free license to use any patents issued, upon which the TPMS depends." (emphasis added). Messrs. Handfield and McLaughlin testified that the assignment was in fact subject to the financial condition specified in MHL's version of the Development Agreement. Both

witnesses claim that ME was required to pay Animatronics approximately $1.65 million, but ME failed to pay the full amount.

The court is not persuaded to reconsider its ruling that the assignment was not conditional. The authenticity of MHL's version of the Development Agreement is in doubt; as noted in the order granting dismissal, MHL's version appears to be incomplete and contains typos. *MHL II*, 622 F. Supp. 2d at 405. Furthermore, the subsequently executed Patent Assignment document uses present tense, unconditional language to assign patent rights to ME: "Animatronics *does hereby assign* to McLaughlin, . . . the entire right, title and interest, domestic and foreign, in and to the inventions and discoveries set forth in the Patent Application . . . ." (emphasis added). The Patent Assignment also states that sufficient consideration has been received. Finally, on the same day the Patent Assignment was executed, the parties entered into a Potential Rescission Agreement. The agreement states that if ME fails to satisfy the terms and conditions of the Development Agreement, it must execute a written assignment back to Animatronics. This Potential Rescission Agreement demonstrates that the assignment was unconditional. If the assignment were in fact subject to a financial condition, there would be no need for ME to formally reassign the patents to Animatronics. In all, the court is not persuaded to reconsider its finding that the assignment was unconditional.

### E.      Oral Rescission

MHL contends that any assignment was orally rescinded by the parties in 1997. Specifically, the repeated attempts among Art Jones (ME's attorney), Honey Jenkins (ME's President), Gerry McLaughlin, and Michael Handfield to amend the Development Agreement and settle the remaining money owed to Animatronics allegedly constitutes meeting of the minds that the prior assignment was rescinded. MHL claims that Honey Jenkins, as ME's President, had actual or apparent authority

to rescind the patent assignment.  ME's bylaws state that "the President . . . shall, subject to the control of the Board of Directors, have general supervision, direction and control of the business" and "shall have the general powers and duties of management usually vested in the Office of President of a corporation."  To prove apparent authority, MHL offers Messrs. Handfield's and McLaughlin's testimony that they believed Ms. Jenkins was authorized to rescind the assignment.

For purposes of this motion, the court will assume without deciding that federal patent law does not require rescission of a patent assignment to be in writing.[1]  Michigan law, which governs the parties' agreements, permits oral rescission of executory contracts.  *Holmes v. Borowski*, 206 N.W. 374, 376 (Mich. 1925).  There are two requirements for rescission that are worth noting in this case.  First, the agent who purports to rescind an agreement must have authority to act on the principal's behalf.  *See Dean Appraisal Co. v. First Penn-Pacific Life Ins. Co.*, 2006 WL 846740, at *3 (E.D. Mich. Mar. 30, 2006).  Second, no rescission may occur without clear evidence of a meeting of the minds.  *See Hy King Assocs., Inc. v. Versatech Mfg. Indus., Inc.*, 826 F. Supp. 231, 240 (E.D. Mich. 1993) (citing *Universal Leaseway Sys., Inc. v. Herrud & Co.*, 115 N.W.2d 294, 297 (Mich. 1962)).

> To be effective, a notice for the rescission or termination of a contract must be clear and unambiguous, covering an unquestionable purpose to insist on the rescission, and where the conduct of one having the right to rescind a contract is ambiguous, and it is not clear whether he has rescinded it or not, he will be deemed not to have done so.

---

[1] At the evidentiary hearing, the court specifically asked MHL's counsel for Federal Circuit case law regarding oral rescission.  Hearing Tr. 201:2-17, 202:13-17.  The court notes that MHL waited until its response brief to address this issue, instead of discussing the Federal Circuit cases in its opening brief.  *See* Def's Resp (Dkt. No. 410) at 16 (citing *Sky Techs. LLC v. SAP AG*, 576 F.3d 1374 (Fed. Cir. 2009); *Akazawa v. Link New Tech Int'l, Inc.*, 520 F.3d 1354 (Fed. Cir. 2008); *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567 (Fed. Cir. 1997)).  Therefore, the defendants were unable to respond to MHL's argument on this matter.

*Jack Mann Chevrolet Co. v. Assocs. Inv. Co.*, 125 F.2d 778, 784 (6th Cir. 1942) (quoting 2 Black on Rescission and Cancellation § 574 (1937)).

MHL has not provided sufficient evidence demonstrating that Honey Jenkins had authority to rescind the assignment or that a meeting of the minds occurred.  As noted in the court's order granting dismissal, Dr. John McLaughlin was the sole owner of ME.  *MHL II*, 622 F. Supp. 2d at 407.  In their November 18, 1997 letter to Animatronics, Gerry McLaughlin and Honey Jenkins recognized that they needed to obtain Dr. John McLaughlin's approval of the proposed settlement agreement, which would transfer the patents back to Animatronics.  Furthermore, Ms. Jenkins's November 21, 1997 draft letter contained a signature line for Dr. John McLaughlin.  Thus, Honey Jenkins recognized that she lacked actual authority to rescind the patent assignment; otherwise she would have executed the rescission on her own.  Additionally, because Mr. Handfield received these letters, he recognized that Ms. Jenkins lacked the apparent authority to rescind.

The evidence also shows that there was no meeting of the minds regarding rescission.  Dr. John McLaughlin was presented with a proposed statement of rescission in November 1997 but refused to sign it.  In 1999, Dr. McLaughlin filed a statement with the USPTO in which he claimed to be owner of record of the '496 and '966 patents.  The evidence demonstrates that Dr. John McLaughlin did not consent to rescission and believed ME still owned the patent rights, so there was no meeting of the minds.  Thus, MHL has failed to persuade the court that reconsideration of its ruling on rescission is necessary.

## IV.    Conclusions

For the reasons stated above, MHL's motion to reconsider is denied.  The court reaffirms its order dismissing claims one and three.

8

SIGNED this  4th  day of November, 2009.

_____

T. JOHN WARD
UNITED STATES DISTRICT JUDGE